# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST 1999 SESSION



FILED

October 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9901-CR-00010 |
| | ) | |
| vs. | ) | Shelby County |
| | ) | |
| KENNETH PICKENS, | ) | Honorable Arthur Bennett, Judge |
| | ) | |
| Appellant. | ) | (Voluntary Manslaughter) |
| | ) | |

**FOR THE APPELLANT:**

**TERESA JONES**
Assistant Public Defender
201 Poplar Avenue
Second Floor
Memphis, TN 38103

**TONY N. BRAYTON**
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General & Reporter

**CLINTON J. MORGAN**
Counsel for the State
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**LEE COFFEE**
Assistant District Attorney General
201 Poplar Avenue
Third Floor
Memphis, TN 38103

**OPINION FILED: _____**

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

**OPINION**

The defendant, Kenneth Pickens, appeals from the sentencing determination of the Shelby County Criminal Court. The defendant pleaded guilty to the Class C felony of voluntary manslaughter and agreed to accept a three-year, Range I sentence, with the manner of service to be determined by the court following the completion of the presentence report and a sentencing hearing. After the hearing, the trial court ordered the defendant to serve his three-year sentence in incarceration. On appeal, the defendant argues that he should have been awarded an alternative sentence in lieu of straight incarceration. We affirm the judgment of the trial court.

On May 30, 1995, the defendant and the victim, Gregory Gibson, were driving their respective vehicles on a street in the neighborhood in which they both lived. The victim maneuvered his car to block the defendant's truck, exited his car, and began to berate the defendant, who remained inside his truck. The victim threatened and cursed the defendant, who obtained a pistol from inside his truck and shot the victim at point blank range. The defendant then left the scene by driving his truck through an opening between the victim's car and another vehicle which was so narrow that the defendant scratched the side of his truck. At the same time, the victim ran around his car. After the defendant left the scene, the victim fell to the ground and died of his wounds. The defendant surrendered himself approximately two hours later. At the sentencing hearing, the defendant testified that the victim waived a pistol at him; however, the defendant's passenger and a second person who witnessed the shooting from the adjacent sidewalk both gave statements in which they said that the victim had no weapon. No weapon was recovered from the scene.

At the time of the shooting, the defendant was thirty years of age and was operating a landscaping business in Shelby County. He had recently been honorably discharged from the U.S. Army after completing ten years of military

2

service.  His criminal record consisted only of a 1992 military conviction for disobeying a lawful order, but his separation from the service reflects that it was based upon alcohol abuse and "rehabilitation failure."  At the time of sentencing, the defendant received a veteran's disability payment of $400 per month.  He resided with his wife and two children, whom he supported.

The evidence before the sentencing court consisted of the plea submission proceedings, the presentence report and the defendant's testimony.  The court expressed concern about the defendant's credibility in view of his testimony the victim had a pistol and that the victim had blocked the defendant's vehicle so that it was impossible for him to drive away.  The trial judge said, "The court believes that you told the untruth [sic] throughout your testimony here.  And that's grave when you're asking the court to grant the relief that you're asking . . . ."  Additionally, the court expressed its concern about the gravity of the offense, where the defendant took a life that he "didn't have to take," and the court found that granting probation would depreciate the seriousness of the offense.  Specifically, the court found that the defendant did "not deserve probation at this time, because of the fact that [the defendant feels] it necessary to not come clean and tell the entire truth on the matter and the serious nature of the matter."

Initially, we respond to the state's argument, set forth in its brief, that this court is without jurisdiction to entertain the appeal because the appeal was untimely and is moot.  This argument apparently stems from the somewhat anomalous appearance of the trial court's judgment.  The guilty plea was submitted and accepted by the court on March 24, 1998. Also on that date, the defendant, his attorney, and the Assistant Attorney General executed a "negotiated plea agreement" which indicated that the defendant pleaded guilty to voluntary manslaughter upon the state's recommendation of a three-year, Range I sentence, with the provision that "suspension of the defendant's sentence is . . . [t]o be determined by the court, after a hearing. . . . A presentence report is . . .

3

[r]equested." On the same date, the court entered an order accepting the guilty plea. A presentence report was prepared on April 28, 1998 and was filed with the court sometime thereafter. The technical record contains an excerpt from the trial court's minutes which reflects that, on December 15, 1998, the trial court conducted a sentencing hearing in order to consider the defendant's request for probation and denied the request. Next appearing in the technical record is a standard-form "judgment." It bears no clerk's stamp showing the filing date. It reflects that the plea was entered on March 24, 1998 and that the sentence was imposed on December 15, 1998. It reflects a handwritten notation that says, "judgment exec. 12-15-98," but the blank for the date of entry of the judgment is filled in to read "3-24-98." In the absence of a filing stamp, this latter entry makes it appear that the judgment may have been entered on March 24, 1998, despite the fact that the face of the judgment shows that sentencing did not occur until December 15, 1998.

We decline to dismiss the defendant's appeal because of mootness or untimeliness of the appeal. It is clear from the plea submission documents that the negotiated plea embraced the length and range of the sentence with the question of alternative sentencing being reserved for determination by the trial court after the completion of a presentence report and a sentencing hearing. The date of the filing of the judgment is at best ambiguous, but given the facts that the parties intended a sentencing determination to be made after March 24, 1998, a presentence report was generated, a sentencing hearing was conducted, and the judgment form reflects that the sentence was actually imposed on December 15, 1998, we deem the judgment to have been filed on the latter date. The result is that the December 17, 1998 filing of the notice of appeal effected a timely appeal to this court.

We now consider the defendant's claim that the trial court erroneously imposed a sentence of incarceration.

4

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the "conclusion of the sentencing hearing" and after determining the range of sentence and the specific sentence, then determines the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5)(1990); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn.

Code Ann. §40-35-102(6) (1997). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. §40-35-102(5) (1997). Thus, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The defendant is clearly eligible for alternative sentencing in general, Tenn. Code Ann. § 40-35-102(5), (6) (1997), but, having committed a violent offense, he not eligible for placement in a community corrections program. Tenn. Code Ann. § 40-36-106(a)(2), (3) (1997). The remaining possibility for alternative sentencing would involve some form of probation. See generally Tenn. Code Ann. § 40-35-104 (1997). The defendant is eligible for probation as an alternative to confinement. Tenn. Code Ann. § 40-35-102(6) (1997). The court is required to automatically consider probation an a "part of the sentencing determination at the conclusion of the sentencing hearing." Tenn. Code Ann. § 40-35-303(b) (1997). Moreover, the defendant is presumed to be a favorable candidate for alternative sentencing, but the presumption of suitability for alternatives to confinement may be overcome by evidence to the contrary. Tenn. Code Ann. § 40-35-102(6); -103(1) (1997). The burden rests with the defendant to show that he should be placed on probation. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995).

Our analysis of the appropriateness of alternative sentencing includes consideration of the factors enumerated in code sections 40-35-210(b) and -103(5). One of these considerations is the "nature and circumstances of the criminal conduct involved." Tenn. Code Ann. § 40-35-210(b)(4) (1997); Ashby, 823 S.W.2d

6

at 169. In addition, we utilize the considerations for ordering confinement that appear in section 40-35-103(1). One of these is semantically linked to the nature and circumstances of the offense. It is the consideration that confinement may be ordered when it is "necessary to avoid depreciating the seriousness of the offense." Tenn. Code Ann. § 40-35-103(1)(B) (1997).

The nexus between the nature and circumstances of the offense and sentencing to avoid depreciating the seriousness of the offense is well recognized. State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991). The nature and circumstances of the offense may serve as the *sole* basis for denying probation when the acts are "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and it would have to be clear that, therefore, the nature of the offense, as committed, outweighed all other factors. . . which might be favorable to a grant of probation." State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); see also State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). "This standard has essentially been codified in the first part of T.C.A. Section 40-35-103(1)(B) which provides for confinement if it is necessary to avoid depreciating the seriousness of the offense." Hartley, 818 S.W.2d at 375. Thus, the Travis qualifiers appear under the first clause of section 40-35-103(1)(B) to assist the court in determining when the need to avoid depreciating the seriousness of the offense overcomes the presumption of suitability for alternative sentencing.

The defendant capably argues that the trial court's denial of alternative sentencing based upon the need to avoid depreciating the seriousness of the offense is inadequate because the Travis qualifiers do not apply to the facts of his case. However, we need not make this determination because the Travis qualifiers apply only when the need to avoid depreciating the seriousness of the offense is the *sole* basis for denying alternative sentencing. See, e.g., Cleavor, 691 S.W.2d at 543. In the present case, although the trial court commented at length about the gravity of the loss of the victim's life, it consistently linked the need to avoid

depreciating the seriousness of the offense to the defendant's lack of credibility. The record reflects that the trial court based its denial of alternative sentencing, and probation in particular, on both of these factors. The need to avoid depreciating the seriousness of the offense was not the sole basis for the denial of relief.

In determining whether to grant probation, the reviewing court considers "the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, in the best interest of the defendant and the public." State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). A defendant's lack of credibility is an appropriate consideration because it reflects on the defendant's potential for rehabilitation. Id.; State v. Chestnut, 643 S.W.2d 343, 353 (Tenn. Crim. App. 1982).

The trial court expressed substantial concerns about the defendant's credibility and, consequently, about his suitability for any form of probation. The trial court's concern for the defendant's credibility is supported in the record, with the result that we may not substitute our inferences and conclusions as to this sentencing determination for those made by the trial court, even if we would have preferred a different result. Fletcher, 805 S.W.2d at 789.

The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
DAVID H. WELLES, JUDGE

8

_____
JERRY L. SMITH, JUDGE