# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 28, 2003

## STATE OF TENNESSEE v. DAVID JENNINGS

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S46,228     Phyllis H. Miller, Judge**

---

**No. E2003-00633-CCA-R3-CD**
**December 22, 2003**

---

The defendant, David Jennings, pled guilty to burglary, a Class D felony; theft over $1,000, a Class D felony; vandalism, a Class D felony; simple possession of marijuana, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor. He was sentenced as a Range I, standard offender to an effective sentence of three years, fined a total of $400, and ordered to pay restitution. On appeal, he argues that the trial court erred in denying alternative sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Julie A. Rice, Contract Appellate Defender (on appeal); Stephen M. Wallace, District Public Defender; and Terry Jordan, Assistant District Public Defender (at trial), for the appellant, David Jennings.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James F. Goodwin, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At the defendant's guilty plea hearing, the State summarized what its proof would have been had this matter proceeded to trial:

> [T]he State's proof would have been that in Sullivan County, Tennessee, on January 13th, 2002, officers from the Kingsport Police Department responded to Classic Pawn Shop, which is located at

1697 Lynn Garden Drive, with reference to an alarm. Upon their arrival there, they found that that business, Classic Pawn Shop, had a large hole cut into the building. An ax was s[i]tting beside that hole.

Officers called for a K-9 Unit, and when the K-9 Unit arrived, they heard a noise in a bush . . . that sounded like someone running. They advised the people who were running to stop or the K-9 would be released.

The subjects were brought into custody. The Co-Defendant, Justin Sexton, was with the Defendant here today. They located several items . . . on the suspects that had been taken from the business, as well as a bag that contained some weapons and other items that were in excess of one thousand dollars ($1,000).

The damage to the building, in cutting it open, exceeded one thousand dollars ($1,000). During a search incident to arrest, the Defendant . . . had a brown plant material on his person, which was identified as marijuana, and he had some JOB Rolling Papers, which . . . could be used to consume the marijuana.

Approximately two months prior to the defendant's February 10, 2003, probation hearing, he voluntarily checked himself into a drug and alcohol treatment program at Indian Path Pavilion in Kingsport where he stayed about one week. There, he was diagnosed with a chemical imbalance and prescribed medications.

At the probation hearing, the defendant's brother, Thomas Dewayne Jennings, testified that after the defendant began taking medication for his chemical imbalance, he became "a different person." Prior to beginning the medication, the defendant drank all of the time and was angry; however, now that he was on the medication, he was calm. Jennings also said he had daily contact with the defendant and had not observed the defendant drinking in the last two months or since he began his medication.

Sayles Theodore Perry, an acquaintance of the defendant who had known him for nine months, testified that he had noticed a change in the defendant's demeanor since his return from the hospital, specifically, the defendant was calm and "wasn't radical like he used to be." Perry saw the defendant about every other day and had not observed him drinking any alcoholic beverages since his release from the hospital. He also said that he had drunk in the defendant's presence during the past two months, but the defendant refrained from drinking on those occasions.

Larry Jennings, the defendant's father, testified that he had daily contact with the defendant, and the defendant had "really changed" since beginning his medication and being released from the hospital. Specifically, he said that the defendant was no longer angry and had stopped drinking.

The defendant testified that he and Sexton had been drinking on the day of the burglary and admitted that he burglarized the pawnshop. Although he could not recall some of the details of the burglary because he had a blackout, he recalled begging the officers not to release the K-9 unit, surrendering himself, and telling Sexton, who proceeded to flee, that "there was no sense in running" from the police. He also remembered getting a duffel bag out of Sexton's car but denied taking anything from the pawnshop.

As to his prior criminal record,[1] the defendant explained that his prior offenses generally occurred when he was under the influence of alcohol. He said that he began drinking and smoking marijuana at the age of twelve, that he had been drinking over a case of beer every day for the past six or seven years, and that he smoked three or four joints of marijuana daily until August of 2002. He also admitted that he continued to smoke marijuana even after he pled guilty in the present case. He said, however, that he had not drunk any alcohol, smoked marijuana, or consumed any other illegal drugs during the past two months.

The defendant further testified that, since beginning his medications, his appetite had increased, he was happier, and he was getting along with others. He said he was able to hold down a job longer and, at the time of the hearing, was working full-time for a contractor. He asked the court to grant him alternative sentencing so that he could work, take care of his children, and receive counseling.

The defendant disputed several of the entries on his presentence report. He denied being charged with assault in 1992 and did not recall being convicted of assault in 1989. He did not recall being convicted of disorderly conduct in March 1996 and denied that his probation was revoked in 1991 for failure to attend drug and alcohol classes.

As for his nonpayment of previous court costs and the administrative fee, the defendant said he did not know that the trial court had ordered him to pay the administrative fee and that he had not paid his court costs because he did not have a good job and was trying to take care of his children. He said he had attended only one Alcoholics Anonymous meeting since his release from the treatment program, explaining that he did not have transportation.

The trial court advised the defendant that if he had smoked marijuana in the last forty-five days it would show up on a drug screen and, if he tested positive for marijuana, he could be charged

---

[1]The defendant's presentence report showed prior convictions for public intoxication, two counts of assault, driving on a revoked license, possession of marijuana, disorderly conduct, and DUI, as well as a probation revocation. He also failed to pay the $50 administrative fee for his court-appointed attorney and owed $2594 in court costs.

with perjury. The defendant conferred with his counsel and then admitted he had smoked marijuana after his release from Indian Path Pavilion.

## ANALYSIS

The defendant argues that the presumption that he is a favorable candidate for alternative sentencing was not completely rebutted because (1) although he has had several prior convictions, they were related to his drug and alcohol addiction, for which he has recently undergone treatment, and occurred prior to his treatment for a chemical imbalance; (2) probation would not depreciate the seriousness of his offenses, and no proof was presented showing that "burglary is a significant problem in Sullivan County needing deterrence"; and (3) although he has been given previous but unsuccessful alternatives to confinement, none of these opportunities was coupled with meaningful rehabilitation and therapy for his substance abuse problem and recently diagnosed chemical imbalance.

Acknowledging that the defendant was eligible for alternative sentencing, the trial court explained why he was a poor candidate:

> Okay, you're presumed to be a favorable candidate for alternative sentencing, but that can be overcome if the Court finds that you possess a criminal history showing a clear disregard for the laws and morals of society or a criminal history demonstrating a failure of past efforts at rehabilitation. Now, one thing that really bears on rehabilitation is honesty and taking responsibility for your actions. Okay, and you didn't score really high on either one of those. You stated you sort of blacked out, then you remembered certain details of [the] crime. Then, you know, of the circumstances surrounding the crime like where the bag came from, the business about where your co-defendant ran to, what you did all of that, so – where you'd been, what you'd been doing, just riding around. That's taking responsibility for the crime, credibility.

The court noted that the defendant's educational and criminal histories were poor and that he had not been honest in his testimony at the probation hearing, explaining why the defendant was being denied alternative sentencing:

> Because you weren't honest with me here today I'm not going to give you alternative sentencing. It would just be a hassle from day one. So alternative sentencing is denied. You're ordered to serve your sentence, three years Range I standard offender in the Tennessee Department of Corrections.

4

Now, you know what I was going to do, I was going to put you in community corrections. I was going to do that and order you to get a full time job, order you to find suitable housing or marry your ex-wife or whatever, if that's where you were going to move to. Now, it won't be too much time till you'll be getting out. And by the way, as part of this sentence you're ordered to pay full restitution on Counts One, Two and Three.

Now, you know, it wouldn't have taken much for you to have walked out of here today, to go down to the community corrections and start that. Paying a little fifty-dollar ($50) administrative fee, been honest with the Court, you know, and you could have done that.

We now will review the trial court's denial of alternative sentencing for the defendant. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). If an offender meets the criteria under Tennessee Code Annotated section 40-35-102(6), the trial court "must presume that he is subject to alternative sentencing." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Id. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Evidence sufficient to overcome the presumption in favor of alternative sentencing includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997); see Ashby, 823 S.W.2d at 169.

Tennessee Code Annotated section 40-35-303(a) provides that a defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See id. § 40-35-303(b) (1997). The burden is upon the defendant to show that he is a suitable candidate for probation. Id.; State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn.

5

Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Id. at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

The defendant's presentence report shows that he had a number of convictions since his first adult conviction, which was for simple assault and imposed on April 18, 1989, when he was 19. For that conviction, he was sentenced to eleven months, twenty-nine days, with all but ten days suspended. He next was placed on probation on November 14, 1989, when he was sentenced to eleven months, twenty-nine days for DUI, with all but four days suspended. On February 10, 1991, he was sentenced to eleven months, twenty-nine days, with all but forty-five days suspended for DUI and six months for driving on a revoked license, with all but two days suspended. On November 14, 1991, he was sentenced to eleven months, twenty-nine days, with all but one day suspended, for possession of a prohibited weapon. He was sentenced on March 7, 1996, to eleven months, twenty-nine days probation for possession of marijuana and, on August 6, 1996, was sentenced to six months probation, apparently after service of twenty days, for driving on a revoked license. On October 10, 1996, he was sentenced to eleven months, twenty-nine days, with all but sixteen days suspended, for two counts of simple assault. Thus, it appears that the defendant previously had been placed on probation at least six times. Alternative sentencing may be denied based upon the need "to protect society by restraining a defendant who has a long history of criminal conduct" and when less restrictive measures have frequently been applied unsuccessfully. Tenn. Code Ann. § 40-35-103(1)(A), (C). Given the defendant's history of being placed on probation and the trial court's concluding that, at the probation hearing, he was not testifying honestly or taking responsibility for his actions, the record fully supports the denial of alternative sentencing.

**CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE

6