# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 15, 2006 Session

## STATE OF TENNESSEE v. ROBERT L. MYERS

### Direct Appeal from the Criminal Court for Sullivan County
### No. S49,260      Phyllis H. Miller, Judge

### No. E2005-02576-CCA-R3-CD - Filed October 2, 2006

The defendant, Robert L. Myers, pled guilty to two counts of attempted aggravated sexual battery, a Class C felony, and was sentenced as a Range I, standard offender to six years on each count, to be served concurrently.  On appeal, he argues that the trial court erred in denying probation or alternative sentencing.  Following our review, we conclude that the trial court properly sentenced the defendant and affirm the judgments of conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. GARY R. WADE, P.J., not participating.

Richard A. Spivey and Timothy R. Wilkerson, Kingsport, Tennessee, for the appellant, Robert L. Myers.

Paul G. Summers, Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Kent L. Chitwood, Jr. and William B. Harper, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On June 9, 2004, a grand jury indicted the sixty-five-year-old defendant on two counts of aggravated sexual battery, and he subsequently pled guilty to the lesser-included offenses of attempted aggravated sexual battery.  At the submission hearing, the State summarized the evidence it was prepared to present had the matter gone to trial:

> [O]n September 9th, 2003, Deputy Sherrie Ramsey of the Sullivan County Sheriff's Department received a referral of child sexual abuse from the Department of Children's Services.  It was originated by a Kimberly Neece.  She stated that at the time Ms. Neece lived with the defendant, Mr. Robert Myers, and her five year-old daughter, Emily; her daughter's birthday, December 5th, 1997, and they lived at 750

VI Ranch Road in Bristol, Tennessee. She stated that on September 6th, 2003 she'd gotten off of work early and got home somewhere between 10:30 and 11 p.m., and home is the address that I just mention[ed] . . . in Sullivan County. [Ms. Neece] went into the house and was going to sneak up on the defendant and Emily and let them know that she was home early. She stated that she walked up the stairs, could hear them talking and laughing. The defendant's bedroom door was half cracked and she could clearly see inside the bedroom. She stated that she saw the defendant, who was lying on the bed with his underwear pulled down, and he was holding his penis in his hand. The five year-old, [Ms. Neece's] five-year-old daughter was sitting on the bed in front of him and she was also naked and she was leaning back on her knees and she was laughing as if they were playing a game. [Ms. Neece] went into the room, confronted them, took [the victim] to her own bedroom and then confronted the defendant again with regard to what had happened. The defendant came in, gave a statement to the Sullivan County Sheriff's Department and stated that prior to Ms. Neece . . . arriving home, that . . . [the victim] . . ., five years of age, had touched his penis on two occasions. According to his statement the second time he did not make her stop. Also, it would be the State's contention that the [victim] made a statement, and would make the statement had this case gone to trial, that they had been playing a game and also and not at the same time in which she had touched his penis but on the same night he had placed his mouth on both of her breasts and on her vagina with regard to this game that they had played, and that would be the State's proof in this case.

At the subsequent sentencing hearing, the defendant offered no proof and said that he was relying, in part, on the presentence report and sex offender risk assessment from Counseling and Consultation Services, which are in the record on appeal. The risk assessment stated that the defendant posed a "moderate risk to re-offend" and that he provided differing versions of the incident:

The willingness or ability to honestly discuss their sexual offending behavior is the single most important factor associated with successful treatment. [The defendant] provided different versions of the "truth" during the course of the assessment. His statements were also significantly different than the victim[']s. [The defendant's] self-report is considered unreliable and his lack of full disclosure is associated with a poor treatment outcome.

The trial court denied alternative sentencing, stating that the defendant's sentence had "already been mitigated enough by letting him plead to attempt." Additionally, the court noted that the victim, being five years old, had no choice about where to live and that the defendant blamed her for the sexual contact:

[T]his little girl couldn't leave. She couldn't go out and find her another home, and it was her home, the only place she had unfortunately to halfway, supposed to be safe

in this world, was where she lives with her mother, and in that house is a man who would abuse her the way this report reads.

Now, . . . who does he blame? Does he take responsibility for it? No, he blames the five-year-old. That's what the Counseling and Consultation Services report states. It states, number one, he's a moderate range of risk. The next is he is able to acknowledge some of the incident offense, however places the responsibility for the sexual contact on the five year-old victim.

The trial court applied enhancement factor (16), see Tenn. Code Ann. § 40-35-114(16) (Supp. 2005), finding that the defendant had "abused a position of private trust on more than one occasion," which the court gave great weight. As for mitigating factors, the court concluded that the defendant's lack of a criminal record was relevant but entitled to "very, very little weight in a crime of this nature." The trial court noted that the defendant had an excellent work history. However, in summation, the trial court decided that incarceration was appropriate:

[C]ommunity corrections is out of the question. I don't find that that would benefit him or the community. He has no drug problem. There's nothing that caused this except his desire for sexual excitement and the five year-old was there to provide it. So I'm denying alternative sentencing, [finding] that the enhancement factors that I've found far outweigh any of the good work history and the no criminal record. So he's ordered to serve his sentence of six years [as a] Range I standard offender in the Tennessee Department of Corrections.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in denying probation or alternative sentencing, saying the court "fail[ed] to properly weigh and balance established mitigating factors with the single enhancement factor applicable to [the defendant], a presumptively favorable candidate for probation or other alternative sentencing." The State argues that the record supports the trial court's imposition of a sentence of confinement.

When reviewing the denial of probation, this court conducts a *de novo* review on the record, "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003) (amended 2005). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If appellate

review "reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's

findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result."

State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000) (quoting State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991)).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is eight years or less. Tenn. Code Ann. § 40-35-303(a) (2003) (amended 2005).[1] Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is on the appellant to show the denial of probation was improper. See State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing Ashby, 823 S.W.2d at 169); see also State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

In this matter, it is clear that, in denying probation, the trial court considered the relevant facts, circumstances, and sentencing principles; and, thus, its findings as to the sentence are entitled to a presumption of correctness. In denying probation, the court found that the defendant had not been candid as to the facts of the incident but had, in fact, "place[d] the responsibility for the sexual contact on the five year-old victim." As we have set out, a defendant's lack of candor reflects on his potential for rehabilitation. Further, according to the report from Counseling and Consultation Services, the defendant's "lack of full disclosure is associated with a poor treatment outcome." In essence, the defendant simply disagrees with the weight which the trial court afforded the

---

[1]We cite to the 2003 version of the Code because it is the law properly applied to the defendant. See 2005 Tenn. Pub. Acts ch. 353, § 18. The defendant could have elected to be sentenced under the 2005 Act because his crimes were committed prior to June 7, 2005, and he was sentenced after that date. See id. As the defendant did not so elect, the 2003 probation provision applies in this case. However, we note that substantial changes came with the 2005 amendment, including increasing the maximum sentence length a defendant can receive and still be eligible for probation from eight to ten years. Tenn. Code Ann. § 40-35-303(a) (2005).

enhancement and mitigating factors. However, it is within the discretion of the trial court as to the weight to be afforded the factors. <u>State v. Boggs</u>, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). We conclude that the record easily supports the trial court's determination that the defendant did not establish that he was a favorable candidate for probation.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's denial of alternative sentencing.

_____
ALAN E. GLENN, JUDGE