IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2015

## STATE OF TENNESSEE v. TERMEL DOWDY

### Appeal from the Criminal Court for White County
No. CR-5905     David A. Patterson, Judge

_____

### No. M2014-02147-CCA-R3-CD – Filed May 14, 2015

_____

The defendant, Termel Dowdy, pled guilty to introduction of contraband into a penal institution, a Class C felony, and DUI, a Class A misdemeanor, in exchange for a ten-year sentence with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered that the defendant serve his sentence in confinement, which he now appeals. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Michael J. Rocco, Sparta, Tennessee (on appeal); and Patrick Hayes, Cookeville, Tennessee (at hearing), for the Appellant, Termel Dowdy.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Philip Hatch, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### FACTS

In January 2013, the White County Grand Jury returned a seven-count indictment against the defendant, charging him with introduction of contraband into a penal institution; possession of a Schedule VI controlled substance, marijuana, with intent to sell or deliver; possession of a Schedule II controlled substance, Oxycodone; possession of a Schedule IV controlled substance, Alprazolam; DUI, first offense; driving on a suspended driver's license; and violation of the implied consent law. On May 6, 2013,

the defendant pled guilty to the introduction of contraband into a penal institution and DUI charges, and the remaining counts were dismissed. Pursuant to the plea agreement, the defendant was sentenced as a Range III, persistent offender to ten years for the introduction of contraband conviction and to a concurrent term of eleven months, twenty-nine days for the misdemeanor DUI conviction, with the manner of service to be determined by the trial court.

The factual basis for the pleas was recited by the State at the guilty plea hearing as follows:

> [O]n September 1st, 2012, a call received by White County dispatch, an EMS driver, a Christopher Dodd who was proceeeding north on Spring Street reported that a Dodge pickup moved into his lane of travel and approached the ambulance head-on, a possible impaired driver.
>
> Shortly thereafter Sergeant Daniel Trivette with the White County Sheriff's Department encountered that same truck, observed it straddling the fog line, followed it into a parking lot, initiated the traffic stop, came into contact with [the defendant], who was the driver. Sergeant Trivette would testify that he believed that [the defendant] had alcohol on his breath, he was somewhat sluggish in his movements and unsteady on his feet. He asked [the defendant] to exit his car and conducted a patdown, which he found a Schedule II and Schedule IV controlled substance. Further search of the vehicle found some open containers of alcohol, as well as several unopened bottles of alcohol.
>
> He placed [the defendant] into custody, asked him if he would consent to a blood alcohol [test], which [the defendant] denied. Ran [the defendant's] driver[']s license through dispatch and it was confirmed to be suspended. Then proceeded to the White County Jail. Prior to entering, Sergeant Trivette would testify that he asked [the defendant] if he had anything else on his person, such as contraband, and [the defendant] responded no, he had already searched him. Came into the jail, Correction Officer Rutherford would testify that upon searching [the defendant] prior to completing the booking in process, when they were in the in-take area, which is an area where inmates are under custodial supervision, [Officer] Rutherford saw a bag of what was believed to be marijuana fall out of the pants of [the defendant]. Officer Rutherford then gave it to Sergeant Trivette to get sent to the TBI [Tennessee Bureau of Investigation] for analysis.

Annell Carpenter, a TBI Agent, would testify that the Schedule II and IV substances that were believed to be found on [the defendant] at the scene were Oxycodone, which is a Schedule II, and Alpraz[o]lam, which is a Schedule IV. And the believed to be marijuana that fell out of [the defendant's] pants inside the jail was indeed a Schedule VI controlled substance which was marijuana.

At the August 8, 2013 sentencing hearing, Teresa Autry, the defendant's probation/parole officer, testified that the defendant was confirmed as a member of the Vice Lords gang in 2003 and that he had dropped out of school in the eleventh grade but had received his GED while incarcerated in 2010. She prepared the defendant's presentence report, which included prior convictions for aggravated burglary (three counts), robbery, driving on a suspended license, possession of a Schedule II controlled substance, sale of cocaine, possession of marijuana, coercion of a witness, aggravated assault, criminal impersonation, first degree burglary, failure to appear, theft of property up to $500, and criminal trespass. Additionally, the defendant's probation had been revoked on more than one occasion and he was on parole at the time he committed the instant offenses.

Testifying for the defendant, Glen Dale Leftwich, a minister, said he had known the defendant for nearly three years and had baptized him two years ago. He said that the defendant had "had a hard life down the way" but that he was "a good person."

The defendant testified that, at the time of his arrest, he forgot he had marijuana on his person because he was "under the influence of alcohol and Xanax pills." He said that the twelve to thirteen grams of marijuana found on him was for his personal use. He claimed that his gang affiliation was in the past when he was a juvenile. The defendant said that, if he were released, he planned to attend a technical school, go to work, and surround himself with "positive people." As to his crimes, the defendant said, "It wasn't like that I hurt somebody to get put in this situation or done anything. I know what I done was wrong, I know that. But the extensive punishment that I'm receiving on it is, almost is ludicrous."

On cross-examination, the defendant admitted that his prior convictions dated back to 1989 and that he had not successfully completed his probation on several prior occasions, saying:

Every time I catch one violation that's a simple anything, . . ., I'm violated to the very maximum without another chance. It's not like these other guys get[] first, second, third, fourth, fifth chance, it's always on my first chance

3

that I violate they stick it to me. That's why you see on there that it's violations and violations and I go in and I serve my time for it.

The defendant also admitted that he was on parole at the time he committed the instant offenses.

At the conclusion of the hearing, the trial court denied any form of alternative sentencing and ordered the defendant to serve his ten-year sentence in confinement. This appeal followed.

## ANALYSIS

The defendant argues that the trial court abused its discretion in denying alternative sentencing.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating

4

factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In State v. Caudle, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

5

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

In ordering the defendant to serve his sentence in confinement, the trial court concluded:

> The defendant is on parole at the time that these offenses are committed. The defendant is drunk and he's driving a vehicle and he's on parole. . . .
>
> This sentence is not being given because [the defendant] killed someone. It's not being given because he was drunk. It's being given because of these two exhibits that are before the court today [the defendant's presentence report and certified copies of judgments]. And what they show is a life that's been spent in contravention of the law and even while on parole and even after being baptized. [The defendant] cannot show to the court that he's able to [con]form himself to the dictates of this society here in White County.
>
> . . . .
>
> I hoped to find today some reason that it would be appropriate for [the defendant] to have a split confinement and have the remainder of the sentence probated, but I cannot find any. I have looked like a jury would to see some saving grace that would cause me to believe that while he is in this community he's likely to conform himself to a Community Correction[s] program, but I cannot find it. Because the court and everyone in this room is aware that future behavior is, the best way to know what the future is going to be is to see what the past was.

6

. . . .

[The defendant] first of all is a multiple [sic] offender. The second thing is he's committed these offenses while he is on parole for other serious felony offenses. The third thing that the court takes into consideration is that [the defendant] has in his past driving related, property crimes, crimes against persons, drug related offenses. And they include robbery, theft, assault, burglary, vandalism, cocaine cases. The court has no confidence that [the defendant] is able to successfully complete any probation. And with no pleasure that the court has, it sentences [the defendant] to serve the ten year sentence confined. . . .

Because the court finds that [Tennessee Code Annotated section] 40-35-103, sentencing consideration that the court is looking at today, part B says confinement is necessary to avoid depreciating the seriousness of the offense. And the court finds that it is a serious offense, a class C felony where there [are] people that are housed, bring drugs to them. And it's particularly suited to provide an effective deterrence to those that would be in the cell or would be going to jail. And that the other that is more of the court's consideration is part C of 40-35-103, measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. I detail that.

Our review of the record reveals nothing that rebuts the presumption of reasonableness afforded to the trial court. The information contained in the presentence report and presented at the sentencing hearing shows that the court acted properly within its discretion in ordering that the defendant serve his sentence in confinement. Moreover, among other things, the defendant's classification as a persistent offender, indicating that he is not a favorable candidate for an alternative sentence, and the fact that measures less restrictive than confinement had been applied unsuccessfully to the defendant support the imposition of a sentence of confinement. The record supports the trial court's determinations.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE

7