# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE 1997 SESSION

FILED

August 15, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,           )
                              )
    Appellee,             )   C.C.A. No. 02C01-9611-CR-00428
                              )
                              )   SHELBY COUNTY
VS.                           )
                              )   HON. BERNIE WEINMAN,
                              )   JUDGE
JOHNNY R. GOODE,              )
                              )   (Voluntary Manslaughter)
    Appellant.            )


FOR THE APPELLANT:

**EDWARD WITT CHANDLER**
2025 Mt. Moriah Rd., Ste. A-100
Memphis, Tennessee 38115


FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee   37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**PATIENCE BRANHAM**
Assistant District Attorney General
Criminal Justice Complex
201 Poplar, Ste. 301
Memphis, Tennessee 38103


OPINION FILED: _____


AFFIRMED


**JOE G. RILEY,**
**JUDGE**

OPINION

The defendant, Johnny R. Goode, appeals as of right a jury conviction of voluntary manslaughter. He was sentenced to four (4) years at the Shelby County Correctional Center and fined $10,000. He presents three issues for our review: 1) whether the trial court correctly refused to suppress the defendant's statement; 2) whether the evidence is sufficient to sustain the voluntary manslaughter conviction; and 3) whether the trial court properly denied the defendant probation. The judgment of the trial court is AFFIRMED.

**FACTS**

On June 10, 1995, the defendant, an admitted "crack cocaine" addict, shot and killed Jerome "Bud" Walker. Walker was a contact between the defendant and various drug dealers. On the evening of the shooting, Walker flagged the defendant down and asked if he wanted to buy any "crack." Displeased with his last purchase from Walker, the defendant refused. Walker then suggested they drive to a different location where the defendant could buy better "crack." Walker ultimately led the defendant to "Rooney," another drug supplier, from whom the defendant purchased $100 worth of "crack cocaine." After the transaction, Walker asked for a ride home, and the defendant agreed.

As the defendant drove into Walker's parking lot, the defendant alleged that Walker threatened him with a knife and demanded the "crack cocaine." The defendant never actually saw a knife, and a set of keys was the only item found in Walker's hands. The defendant alleged that Walker lurched at him, and defendant shot Walker in the neck. Walker died of the bullet wound a short time later.

The defendant went home and did not call the police. The next morning he received several calls from individuals claiming to be "Kenny," a drug dealer and friend of Walker's. The caller insisted that the defendant go to a car wash to meet with him. The defendant did not recognize the voice as Kenny's and suspected he was being set up to be killed for shooting Walker. The defendant armed himself with

2

two semi-automatic weapons and left for the car wash. Before leaving, he wrote several notes explaining that the shooting of Walker was in self-defense and if he were found dead, it was Kenny and his friends who killed him.

When the defendant arrived at the car wash, he was approached by Captain Michael Houston and Sergeant Jim Nichols of the Memphis Police Department. They had received a tip that the defendant had killed Walker. After asking the defendant his name, the officers noticed a bulge in the defendant's shirt which appeared to be a gun. At this point, the two officers pulled their own weapons. As they took two guns from the defendant, Captain Houston asked the defendant which gun he used to kill Walker. The defendant replied he used the smaller one.

The officers arrested the defendant and placed him in the squad car. As Sgt. Nichols was interviewing witnesses on the street, the defendant told Capt. Houston that he had not been read his rights. Capt. Houston stated he was not going to be questioned yet; however, he informed the defendant of his rights. Capt. Houston told the defendant again that he was not going to be questioned at that time.

As they waited in the car, the defendant stated that he wanted the officer to go to his house and collect a shell casing and the notes which he had written describing the shooting. The defendant signed a consent to search form. The officers went to his house, collected the notes and shell casing, then returned to the police station where the defendant was again explained his rights. The defendant subsequently gave a written statement admitting to the shooting of Walker.

Although charged with second degree murder, the defendant was convicted by the jury of the lesser offense of voluntary manslaughter.

**MOTION TO SUPPRESS**

The defendant argues that the trial court erroneously refused to suppress his

statements and contends they were taken during a custodial interrogation before he was advised of his constitutional rights. He contends that he was "in custody" when stopped and initially questioned by the police officers and that subsequent statements and evidence flowing therefrom are tainted as "fruit of the poisonous tree."

## I. Custodial Interrogation

Statements of an accused person "stemming from custodial interrogation" cannot be introduced as evidence unless certain warnings are given to protect a person's privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). The Miranda warnings are required only in situations of "custodial interrogation." State v. Cooper, 912 S.W.2d 756, 759 (Tenn. Crim. App. 1995). "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706; State v. Smith, 868 S.W.2d 561, 570 (Tenn. 1993); Cooper, 912 S.W.2d at 759.

In State v. Anderson, our Supreme Court held that the applicable standard to determine whether an individual is "in custody" is whether under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest. 937 S.W.2d 851, 855 (Tenn. 1996). Along with the objective standard, the Court listed the following non-exclusive factors for courts to consider: the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect and the suspect's verbal or nonverbal responses; the extent

to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.  Id.; see also State v. Bush, 942 S.W.2d 489, 499 (Tenn. 1997).

## II. Evidence at the Suppression Hearing

The evidence at the suppression hearing revealed that there were three separate instances in which the defendant divulged inculpatory evidence.  The first was an affirmative response to the police officer's inquiry about which gun the defendant used to kill Walker.  The second involved incriminating notes and the matching shell casing found in the defendant's carport as a result of the consent search.  The third was a written admission to the killing of Walker signed by the defendant at the police station.

Defendant's apprehension began when Captain Houston and another officer responded to an anonymous tip.  The tip provided the name, "Johnny," and his description as being the person responsible for killing Walker, a description of the defendant's car and license plate number, and where the defendant could be found.  The officers approached the area and identified the car; however, it was unoccupied.  The defendant walked out of a nearby building, and police officers approached him.  One officer asked the defendant his name and the defendant answered, "Johnny."  They noticed a bulge in his shirt consistent with a gun and asked him to raise his hands.   The defendant hesitated, and the officers pulled their weapons.  The defendant acceded and while removing two weapons from the defendant, Capt. Houston asked, "Which one of these guns did you use to shoot Bud with?"  The defendant responded, "the smaller one."  Immediately thereafter, the officers placed the defendant under formal arrest.

The officers handcuffed the defendant, put him in the back seat of the squad car, and called for a back-up unit.  The defendant told Capt. Houston he had not

been advised of his rights. Capt. Houston informed the defendant that he would not be questioned at that time; nevertheless, he advised him of his <u>Miranda</u> rights. While waiting for the other officer to interview witnesses at the scene, the defendant volunteered that there were some notes at his house that he wanted the officers to get. He also described where they could find the shell casing from the pistol used to shoot Walker. The officers obtained a consent to search form, signed by the defendant, to search the area where defendant stated these items could be found. After retrieving the items, the officers proceeded to the police station. Some three hours later, the defendant was again advised of his rights, signed a waiver, and gave a full written admission detailing the killing of Walker.

### III. Analysis of Initial Statement

Considering the factors set forth in <u>Anderson</u> and that the defendant was obviously deprived of his freedom of movement when the two officers with drawn weapons searched him and found two pistols, we are constrained to conclude that the defendant was "in custody" when he was asked which pistol he used to shoot the victim. That statement was erroneously admitted; however, we find its admission harmless in light of his written statement. Tenn. R. App. P. 36(b).

### IV. Fruit of the Poisonous Tree

Defendant contends, however, that the notes seized pursuant to the consent to search and the written admission were "fruit of the poisonous tree" and inadmissible. <u>See</u> <u>Dunaway v. New York</u>, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

6

An illegal, unwarned confession extracted from a defendant creates a rebuttable presumption that a subsequent confession, even if preceded by proper Miranda warnings, is tainted by the initial illegality. State v. Smith, 834 S.W.2d 915, 919 (Tenn. 1992). That presumption may be overcome by the prosecution, however, if the state can establish that the subsequent confession was given freely and voluntarily and that the constitutional right to be free from self-incrimination was not waived due solely to the psychological pressures resulting from giving the previous statement. Id. at 921.

Smith listed nine (9) factors to be utilized in determining whether the initial, illegal conduct prevents the accused from subsequently (1) making a free and informed choice to waive the state constitutional right not to provide evidence against one's self, and (2) voluntarily confessing his involvement in the crime. Id. at 919. Those factors are:

> 1. The use of coercive tactics to obtain the initial, illegal confession and the causal connection between the illegal conduct and the challenged, subsequent confession;
>
> 2. The temporal proximity of the prior and subsequent confessions;
>
> 3. The reading and explanation of Miranda rights to the defendant before the subsequent confession;
>
> 4. The circumstances occurring after the arrest and continuing up until the making of the subsequent confession including, but not limited to, the length of the detention and the deprivation of food, rest, and bathroom facilities;
>
> 5. The coerciveness of the atmosphere in which any questioning took place including, but not limited to, the place where the questioning occurred, the identity of the interrogators, the form of the questions, and the repeated or prolonged nature of the questioning;
>
> 6. The presence of intervening factors including, but not limited to, consultations with counsel or family members, or the opportunity to consult with counsel, if desired;
>
> 7. The psychological effect of having already confessed, and whether the defendant was advised that the prior confession may not be admissible at trial;
>
> 8. Whether the defendant initiated the conversation that led to the subsequent confession;  and

> 9. The defendant's sobriety, education, intelligence level, and experience with the law, as such factors relate to the defendant's ability to understand the administered <u>Miranda</u> rights.

<u>Id</u>. at 919-920.

After examining these factors, we conclude the consent to search and the written admission were preceded by <u>Miranda</u> warnings and were not tainted by the initial <u>Miranda</u>-poor question. The state has clearly overcome the rebuttable presumption.

Accordingly, the evidence resulting from the consent search and the written confession were properly introduced. This issue is without merit.

### SUFFICIENCY OF THE EVIDENCE

The defendant argues the evidence is insufficient to support the conviction of voluntary manslaughter. Specifically, the defendant contends that he should have been acquitted on the theory of self-defense.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560, 576 (1979); <u>State v. Abrams</u>, 935 S.W.2d 399, 401 (Tenn.1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn.1984); <u>State v. Brewer</u>, 932 S.W.2d 1, 19 (Tenn.Crim.App.1996).

Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. Tenn. Code Ann. § 39-13-211.

8

The defendant was indicted on the charge of second degree murder and the jury returned a conviction on the lesser offense of voluntary manslaughter. Defendant contends he shot the victim in response to a threat of being robbed with a knife. No knife was ever found, however, and the defendant admitted to never having seen a knife. The only thing found in the victim's hands were car keys. The jury could have rationally concluded that the unarmed victim was attempting to get defendant's cocaine producing provocation in the defendant, but that the defendant's action in shooting the victim was clearly excessive and unnecessary for his self-defense.

It was within the prerogative of the jury to reject the claim of self defense. It is well settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). The evidence was sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of voluntary manslaughter. Accordingly, this issue is without merit.

## DENIAL OF PROBATION

The defendant argues that the trial court improperly denied probation. A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). A defendant with a total effective sentence in excess of eight years is eligible for probation if the individual sentences imposed for the convictions fall within the probation eligibility requirements. State v. Langston, 708 S.W.2d 830, 832-833 (Tenn. 1986).

An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to eight years or less and who is not an

offender for whom incarceration is a priority is subject to alternative sentencing. State v. Byrd, 861 S.W.2d 377, 379-380 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. Id. at 380. However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's

potential for rehabilitation. State v. Chestnut, 643 S.W.2d 343, 353 (Tenn. Crim. App. 1982).

The defendant was convicted of voluntary manslaughter, a Class C felony, and sentenced as a standard offender to four (4) years. Accordingly, the defendant is presumed to be a favorable candidate for probation. Tenn. Code Ann. § 40-35-303 (a), (b). Proof at the sentencing hearing revealed the defendant had a prior conviction for marijuana possession, and that he was addicted to "crack" cocaine and alcohol. The court noted the defendant's failure to involve the police and his kill or be killed attitude as "unbelievable behavior." The trial court properly found that the defendant's criminal and social history, the circumstances of the crime, and his poor

amenability to rehabilitation made him unsuitable for probation.  We agree. This issue is without merit.

The judgment of the trial court is AFFIRMED.

_____
JOE G. RILEY, JUDGE

CONCUR:


_____
PAUL G. SUMMERS, JUDGE



_____
DAVID H. WELLES, JUDGE

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON


| STATE OF TENNESSEE, | ) | |
|---|---|---|
| | ) | C.C.A. No.  02C01-9611-CR-00428 |
| Appellee, | ) | |
| | ) | SHELBY  COUNTY  No. 96-00668 |
| vs. | ) | |
| | ) | |
| | ) | (Voluntary Manslaughter) |
| | ) | |
| JOHNNY R. GOODE, | ) | |
| | ) | **AFFIRMED** |
| Appellant. | ) | |

**JUDGMENT**

Came the appellant, Johnny R. Goode, by counsel, and the state, by the Attorney General, and this cause was heard on the record on appeal from the Criminal Court of Shelby County; and upon consideration thereof, this court is of the opinion that there is no reversible error.

It is, therefore, ordered and adjudged that the judgment of the trial court is AFFIRMED, and the case is remanded to the Criminal Court of Shelby County for execution of the judgment of that court and for collection of costs accrued below.

In the event the appellant indicates an intention to file an application for permission to appeal to the Supreme Court, he may be admitted to bail in the additional amount of $10,000 for a total bond amount of $25,000 with sufficient sureties to be approved by the clerk of the trial court pending the filing and disposition of said application. In default of such bond, he shall be remanded to the custody of the Sheriff of Shelby County.

Costs of appeal are taxed to the appellant, Johnny R. Goode, for which let execution issue.

PER CURIAM

Joe G. Riley, Judge

Paul G. Summers, Judge

David H. Welles, Judge