IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2004 Session

**STATE OF TENNESSEE v. GEORGE LEBRON JOHNSON**

**Appeal from the Criminal Court for Hamilton County**
**No. 241881     Douglas A. Meyer, Judge**

---

**No. E2004-00834-CCA-R3-CD - Filed March 1, 2005**

---

The Hamilton County Criminal Court Grand Jury indicted the defendant, George Lebron Johnson, on two counts of attempt to commit first degree murder. He entered into an agreement with the state to plead guilty to two counts of aggravated assault in exchange for concurrent six-year, Range I sentences. The agreement provided that the trial court would determine the manner of service of the effective six-year sentence. On January 9, 2004, the trial court ordered him to serve the effective sentence in confinement. On February 6, 2004, the defendant moved the court to allow him to withdraw his guilty pleas and for a new trial on the issue of the manner of service of his sentences. The trial court denied both motions, and the defendant has appealed. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed; Case Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Melanie R. Snipes, Chattanooga, Tennessee, for the Appellant, George Lebron Johnson.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and Lila Statom, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

At the sentencing hearing, the victim Terrance Brown testified that on April 22, 2002,[1] he was driving his car and was accompanied by Tiffany McCrary and another female, when the defendant "swerved in front" of Mr. Brown's car and forced him to stop. He testified that the defendant then jumped out of his car and "unloaded his weapon into my vehicle [and] hit me six times." As a result of his gunshot wounds, Mr. Brown was hospitalized for about six weeks. He

---

[1] The indictment alleged the offense date as April 21, 2002.

testified that a bullet is still located in his neck in a precarious place and that neurological problems could result from "horseplaying and all that."

The officer who investigated the shooting testified at the sentencing hearing that the defendant admitted to shooting the victim. The defendant had claimed that the shooting was the result of Mr. Brown's dispute with a friend of the defendant over some "hub caps." The officer testified that when the defendant fired upon Mr. Brown's car, a female in the car was shot in the thigh.

The presentence report revealed that the 31-year-old defendant had previously been convicted of auto burglary (1991); theft (1991); criminal trespass (1991); attempted larceny (1991); possession of drug paraphernalia (1991); possession of cocaine (1991); sale of cocaine (1992); possession of cocaine (1992); violation of driver's license law (1994); driving on a revoked license (1994); disorderly conduct (1995); unlawful possession of a weapon (1995); driving on a revoked license (1996); possession of cocaine (1996); failure to appear (1997); and assault (1998). On at least two occasions, the defendant was apparently on probation when he re-offended.

The defendant's wife testified on his behalf. She stated that she and the defendant had been married since 1996 and had three children. She testified that both she and the defendant are employed and that the defendant stays at home when he is not working. The defendant's mother testified about his positive qualities of industry and family devotion.

In considering the manner of service of the defendant's sentence, the trial court applied the following enhancement factors: The defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate sentencing range, Tenn. Code Ann. § 40-35-114(2) (2003); the offense involved more than one victim, *id.* § 40-35-114(4); the personal injuries inflicted upon the victim were particularly great, *id.* § 40-35-114(7); the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, *id.* § 40-35-114(9); and the crime was committed under circumstances under which the potential for bodily injury to a victim was great, *id.* § 40-35-114(17). In mitigation, the trial court found that since the offense in question, the defendant has exhibited responsible behavior toward his family. The court concluded that the enhancement factors far outweighed the mitigating factor and commented that "anyone who fires a weapon at somebody else should serve active time." On January 9, 2004, the court entered its judgment ordering the defendant to serve his six-year sentence in incarceration.

On February 6, 2004, the defendant filed motions for a new trial and for leave to withdraw his guilty pleas. *See* Tenn. R. Crim. P. 33 (new trial), 32(f) (motion to withdraw guilty plea). At the hearing on the motions, counsel for the defendant asserted that the defendant pleaded guilty believing that he would receive probation. The state introduced the transcript of the defendant's plea submission hearing. During the plea colloquy, the trial court said, "[Y]our sentencing hearing could be put over to a later date, the manner of your sentence, determine the manner of your sentence; is that understood?" The defendant made no response. Following the

argument of counsel at the motions hearing, the trial court found that the defendant had not established that his plea was based upon an understanding that he would receive probation. The court denied both motions, and the defendant timely appealed.

Although the issue has not been raised by the parties, we take this opportunity to point out that we have considered whether the trial court had subject matter jurisdiction to enter convictions of aggravated assault. Count (1) of the indictment alleged an April 21, 2002 attempt to kill Terrance Brown. Count (2) alleged an attempt on the same date to kill Tiffany McCrary. The indictment language contained no allegation of serious bodily injury to either victim. Pursuant to Tennessee law, aggravated assault is not a lesser included offense of the charged offenses of attempt to commit first degree murder. *State v. Trusty*, 919 S.W.2d 305, 312 (Tenn. 1996), *overruled in part by State v. Dominy*, 6 S.W.3d 472 (Tenn. 1999); *State v. Joshua Lee Williams*, No. W2000-01435-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, June 27, 2001); *State v. Christopher Todd Brown*, No. M1999-00691-CCA-R3-CD, slip op. at 3-4 (Tenn. Crim. App., Nashville, Mar. 9, 2000); *State v. Roscoe L. Graham*, No. 02C01-9507-CR-00189, slip op. at 21 (Tenn. Crim. App., Jackson, Apr. 20, 1999). As such, aggravated assault is not charged in the indictment. Nevertheless, our supreme court has held that an amendment of an indictment for attempt to commit first degree murder results when the defendant enters into an agreement to plead guilty to aggravated assault and the judgment specifies that the charged offense was amended to aggravated assault. *State v. Yoreck*, 133 S.W.3d 606, 612 (Tenn. 2004). In the present case, the judgment for count (1) makes no specific provision for amendment of the indictment, but the judgment for count (2) specifically recites that the charge is amended to aggravated assault. We conclude pursuant to *Yorek* that count (2) was amended to charge aggravated assault, and moreover, we believe the facts of the case indicate that count (1) was effectively amended to charge aggravated assault as well. The indictment alleged that the offenses were committed on the same date; the singular plea agreement embraces pleas on both counts; and the agreement prescribes concurrent service of identical sentences. We find it difficult to believe that the parties and the trial court did not intend to amend both counts. We will instruct the trial court to correct its judgment on count (1), but otherwise we shall proceed to adjudicate the defendant's issues on his convictions of aggravated assault.

In his first issue, the defendant claims that the trial court erred in denying an alternative sentence. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, even if we would have preferred a different result. *State v. Bolling*, 75 S.W.3d 418, 420 (Tenn. Crim. App. 2001).

In making its sentencing determination, the trial court, at the "conclusion of the sentencing hearing" and after determining the range of sentence and the specific sentence, then determines the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. *Id.*; *see* Tenn. Code Ann. § 40-35-210(a), (b), -103 (5) (2003).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." *Id.* § 40-35-102(5) (2003). Thus, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the Act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *Bolling*, 75 S.W.3d at 420.

Consideration of the evidence and information offered on the enhancement and mitigating factors is relevant to determination of "the appropriate combination of sentencing alternatives that shall be imposed on the defendant." Tenn. Code Ann. § 40-35-210(b)(5) (2003); *see Bolling*, 75 S.W.3d at 421; *Donald Higbee v. State*, No. 03C01-9808-CR-00286, slip op. at 7 (Tenn. Crim. App., Knoxville, Dec. 3, 1999).

In the present case, the defendant, a Range I offender, enjoyed the presumption of favorable candidacy for alternative sentencing for his Class C felonies. *See* Tenn. Code Ann. § 40-35-102(6) (2003). Moreover, he was eligible for probation. *See id.* § 40-35-303(a) (defendant receiving sentence of eight years or less generally eligible for probation).

Unlike the presumption of favorable candidacy for alternative sentencing in general, a defendant bears the burden of demonstrating the suitability of probation, in particular. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). To meet that burden, the defendant must show that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Id.* at 456 (citation omitted). In that regard, the trial court appropriately considers the defendant's candor and credibility, or lack thereof, as indicators of his potential for rehabilitation. *See, e.g., State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

In the present case, the defendant established no entitlement to full probation, and moreover, his statutory favorable candidacy for alternative sentencing was overcome by his long history of criminal conduct, *see* Tenn. Code Ann. § 40-35-103(1)(A) (2003) (confinement may be based on necessity to "protect society by restraining a defendant who has a long history of criminal conduct"), and his previous failure to complete terms of probation without re-offending, *see id.* § 40-35-103(1)(C) (confinement may be based upon the fact that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant"). The record cogently supports the trial court's determination that the defendant should serve the six-year sentence in incarceration.

In his next issue, the defendant claims that the trial court erred in denying his motion to withdraw his guilty plea. After sentencing but before a trial court's judgment becomes final, the court "may set aside the judgment of conviction and permit the defendant to withdraw the [guilty] plea" as a means of correcting "manifest injustice." Tenn. R. Crim. P. 32(f). "The term 'manifest injustice' is not defined by either the rule or the cases that have applied the rule. Whether there has been 'manifest injustice' must be determined by the trial courts and the appellate courts on a case by case basis." *State v. Turner,* 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

A trial court may permit the withdrawal of a plea of guilty to prevent manifest injustice when it is established that the plea was the result of coercion, fraud, duress, mistake, or fear. *Id.* Manifest injustice may also result from a "gross misrepresentation" made by the prosecutor, the prosecutor's withholding of material, exculpatory evidence that influences the entry of the plea, or from a plea of guilty that was not voluntarily, understandingly, or knowingly entered. *Id.* "Conversely, a trial court will not, as a general rule, permit the withdrawal of a plea of guilty to prevent 'manifest injustice' when the basis of the relief is predicated upon (a) an accused's 'change of heart,' (b) the entry of the plea to avoid harsher punishment, or (c) an accused's dissatisfaction with the harsh punishment imposed by a trial court or a jury." *Id.*

Significantly, the accused has the burden of establishing that the plea of guilty should be withdrawn to prevent manifest injustice. *Id.*

To be sure, neither the written plea agreement nor the plea submission colloquy explicitly mentioned that the trial judge would determine whether any or all of the effective six-year sentence would be served on probation. Thus, although the record may have corroborated the defendant's testimony that he believed probation was a component of the plea agreement, the record without such testimony does not establish that the defendant held this belief. The burden rested upon the defendant to show that manifest injustice existed. Because he did not testify or otherwise prove that he believed the state had agreed to probation, he failed to establish in the trial court his claim of manifest injustice. As a matter of appellate review, we discern no basis for overturning the trial court's determination.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE