IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2017

## STATE OF TENNESSEE v. JOEY TYRONE SIMPSON

**Appeal from the Circuit Court for Lawrence County**
**No. 33591     J. Russell Parkes, Judge**

_____

### No. M2016-01962-CCA-R3-CD

_____

The Defendant, Joey Tyrone Simpson, entered an open guilty plea to aggravated assault, a Class C felony, and was sentenced as a Range I, standard offender to three years in the Department of Correction. Additionally, he was ordered to pay $2880 in restitution for the victim's medical expenses. On appeal, he argues that he should have been granted alternative sentencing. Following our review, we affirm the judgment of the trial court but remand for entry of a corrected judgment to reflect the amount of restitution as $2880, rather than $2280.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded for Entry of a Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Brandon E. White, Columbia, Tennessee (on appeal); Claudia S. Jack, District Public Defender; and Robert H. Stovall, Jr., Assistant Public Defender (at hearing), for the appellant, Joey Tyrone Simpson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Emily C. Hartman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The victim and the Defendant presented widely divergent versions of the event which resulted in the Defendant's pleading guilty to aggravated assault.

At the sentencing hearing, the victim, Piyushbai Patel, testified that he owned the North End Texaco Market and, on October 10, 2015, had been working in the back of the store with one of his employees. Around 3:00 p.m., the Defendant came in the back door and asked the victim for money, causing the two to argue. The victim went to the front of the store, followed by the Defendant, who was threatening him. The victim called the police, showed them the video of the Defendant inside the store, and told them that the Defendant had been threatening him and following him through the store.

From 3:00 p.m. to 6:00 p.m., the Defendant kept "coming back and checking everything." When the Defendant returned to the store for the final time that day, the Defendant hit the victim in the back of the head while the victim's face was in the drive-through window. The victim turned around and saw the Defendant with a golf club, as the Defendant hit the victim in the mouth and the face "a couple [of] times." The victim was struck "[a]round six times" by the Defendant. While in the store, the Defendant damaged the security system and batteries, as well as the gas pump monitor. The victim was treated at a hospital emergency room for which he was billed $2880. The damage to the victim's store was between $5000 and $10,000, and he was unable to work for several days afterwards.

The Defendant testified that he worked for Perry Wayne, who was in the refrigeration and air conditioning business. In the fall of 2014, Mr. Wayne instructed the Defendant to go to the victim's business to clean leaves from the air conditioning unit. The Defendant said that the victim owed $100 for the cleaning job, and the sum was to be paid to the Defendant. He said he had asked the victim for his money "for months and months," and, in the meantime, Mr. Wayne had died. The Defendant testified that, on the day of the incident, he took a golf club to the victim's business "[b]ecause [he] wanted [his] money and wanted to let [the victim] know [he] was serious." The Defendant said that he "felt disrespected" when the victim did not pay him, that he "checked" the victim with the golf club, and struck the victim with his fist.

The Defendant acknowledged that he had a prior conviction for DUI in 2014, as well as three convictions for domestic assault, all involving the same victim, and resisting arrest in 2011. He served ninety days for one of the domestic assault convictions. The Defendant said that his probation for the DUI conviction had been revoked after he tested positive for marijuana. The Defendant's presentence report, which was admitted as an exhibit to the hearing, reflected convictions in 2001 for casual exchange of marijuana, attempted tampering with evidence, and reckless driving. The forty-seven-year-old Defendant also reported that he had used marijuana daily since the age of fifteen to seventeen and as recently as twenty to thirty days prior to the hearing. The Defendant said he had been receiving disability benefits since 2011 because of his "diminished

-2-

capacity." He explained that he was "severely bipolar, schizophrenic, depression" and, in the past, had "heard voices and s[een] things."

Shirley Dennis, the Defendant's mother, testified that the Defendant never had been violent around her. She said the Defendant was a "chronic diabetic" and had asthma and high blood pressure. She said that the Defendant was unable to hold a steady job.

Murry Green testified that he had been a friend of the Defendant for about ten years. He said that he believed the Defendant would be successful if granted probation.

In sentencing the Defendant, the court explained that, based upon the evidence presented at the sentencing hearing, the presentence report, the victim impact statement, as well as the principles of sentencing and the nature and characteristics of the current offense, there were no additional enhancement factors. As mitigating factors, the court found that the Defendant was suffering from a mental or physical condition that reduced his culpability. The court did not find that the Defendant acted under strong provocation or that substantial grounds existed to excuse or justify his conduct. Accordingly, the court sentenced the Defendant to three years.

As for alternative sentencing, the trial court noted that the Defendant's criminal history included three prior convictions for domestic assault. Further, the court took judicial notice of the fact that the Defendant had been arrested for another offense after his guilty plea in the case then before the court. The court noted that the Defendant's probation once had been revoked in Giles County and that he had smoked marijuana, which would have been an additional ground for revocation.

## ANALYSIS

For reasons which we will explain, we affirm the trial court's sentencing of the Defendant.

Under the 2005 amendments to the Sentencing Act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

-3-

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2014).

We review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard applies when a defendant challenges the denial of alternative sentencing. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

      (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

      (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

      (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

In this matter, it is clear that the trial court carefully considered the applicable law, as well as all relevant factors in sentencing the Defendant as a Range I, standard offender to a minimum three-year sentence for the Class C felony. The specific offense then before the trial court resulted from an assault committed by the Defendant, who had three prior convictions for domestic assault, one of which required that the Defendant serve ninety days in confinement before the remainder of his sentence would be suspended. Accordingly, the trial court cited the Defendant's prior criminal history as weighing against alternative sentencing. Taking together the appropriate considerations, the trial court concluded that the Defendant should serve his sentence in confinement. The record clearly shows that the trial court considered all relevant aspects of the Defendant's records. We conclude that the court did not abuse its discretion in denying alternative sentencing.

We note that at the hearing, the trial court ordered the Defendant to pay $2880 for the victim's medical expenses, but the judgment reflects the amount as $2280. Accordingly, this matter is remanded for entry of a corrected judgment setting the amount of restitution at $2880.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

                    _____
                    ALAN E. GLENN, JUDGE