IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 16, 2018

## STATE OF TENNESSEE v. DEMETRIC JOHNSON

**Appeal from the Circuit Court for Marion County**
**No. 9555V5, 9852V4, 10152V1, 10259V1, 10394V1, 10395V1      Justin C. Angel,**
**Judge**

_____

### No. M2017-01527-CCA-R3-CD

_____

The Defendant, Demetric Johnson, appeals the trial court's revocation of his probation, arguing that the court should have imposed an alternative sentence rather than ordering him to serve the balance of his original sentence incarcerated, and therefore abused its discretion. After thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

B. Jeffrey Harmon, District Public Defender; and Norman Lipton, Assistant Public Defender, for the appellant, Demetric Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Julia Veal, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On January 7, 2014, the Defendant pled guilty to making a false report (Case 9555), in addition to another offense (Case 9559), and was sentenced to nine months of incarceration and two years and three months of probation, for a total effective sentence of three years. On April 22, 2014, a violation of probation report was filed with the trial court, stating that the Defendant had failed to report to his probation supervisors in March

and April. This violation of probation report was amended on August 15, 2014, to reflect that the Defendant had again failed to report to his probation supervisors and had been charged with criminal trespass and failure to appear. On September 22, 2014, the Defendant pled guilty to the failure to appear charge (Case 9852) and was sentenced to three years and ten months of probation, to run concurrently with his probationary sentence from the false report conviction (Case 9555). A second violation of probation report for Case 9555 was filed on November 19, 2014, stating that the Defendant had again failed to check in with his probation supervisors and failed to report that he had been fired from his job.

A third violation of probation report for Case 9555 was filed on February 2, 2015, indicating that the Defendant had been charged with perjury. This report was amended on August 4, 2015, to reflect that the Defendant had been charged with domestic assault and aggravated burglary. The report was again amended on October 16, 2015, showing that the Defendant had again failed to report to his probation supervisors and had failed a drug test. The trial court then partially revoked his probation for Cases 9555, 9559, and 9852 on January 13, 2016, sentencing the Defendant to six months in confinement. A fourth violation of probation report for Case 9555 was filed with the trial court on July 15, 2016, stating that the Defendant had been charged with driving on a revoked license, simple possession, and failure to appear, and had failed to report these new charges and a change of residence to his probation supervisors. The report further stated that the Defendant had failed two additional drug tests and failed to comply with a special condition of his probation, namely that he submit to drug testing.

On August 9, 2016, the Defendant pled guilty to aggravated criminal trespass (Case 10152), two charges of failure to appear (Cases 10259 and 10394), and simple possession of a schedule VI drug (Case 10395). The trial court then again partially revoked his probation with respect to Cases 9555 and 9852, sentencing him to 90 days of confinement with 23 days of jail credit. He was also sentenced to four consecutive probationary sentences of eleven months, twenty-nine days for Cases 10152, 10259, 10394, and 10395. These four sentences were to be served concurrently with his 90-day sentence and any other sentences stemming from probation violations.

On September 2, 2016, a fifth violation of probation report was filed with the trial court for Case 9555, stating that the Defendant had been charged with improper registration display, driving on a revoked license, and possession of methamphetamine for resale. The report was amended on April 10, 2017, to reflect that the Defendant had also been charged with aggravated assault of a police officer and driving on a revoked license, and he had failed to report these new charges to his probation supervisors.

The trial court held a revocation of probation hearing on June 26, 2017, where the State asked the trial court to revoke the Defendant's probation in full, and the Defendant requested that he be granted jail credit. One of the Defendant's probation supervisors, Schultzie Skiles, who is employed by the Tennessee Department of Correction, testified that the Defendant had not paid anything toward his court costs or completed any public service work at the time of the hearing. She further stated that the Defendant had been sentenced to a "six year [Tennessee Department of Correction] sentence [that] was to be suspended after . . . a completion of [rehabilitation]" for his possession of methamphetamine for resale conviction and that she had no knowledge of whether the Defendant ever completed the rehabilitation program. Ms. Skiles also testified that she had personally filed at least one of the Defendant's violation of probation reports, and the Defendant had not reported to her since entering rehabilitation. Diana Perry, a probation supervisor employed by the Southeast Tennessee Human Resource Agency, further testified that the Defendant failed to contact her after his release from jail and reiterated that he had not made any payments toward his court costs.

Officer Nathan Billingsley, a patrolman with the Jasper Police Department, testified at the revocation hearing that he conducted a traffic stop of the Defendant, who gave him a false name, date of birth, and social security number. Deputy Nathan Smith, employed by the Marion County Sheriff's Department, testified at the hearing that he was also present during the traffic stop. Deputy Smith stated that he was previously employed in the same jail where the Defendant was confined and therefore recognized him during the traffic stop, despite his attempts to mislead the officers. After Deputy Smith realized who the Defendant was and that he had outstanding arrest warrants, the Defendant fled the scene with Deputy Smith still "hanging out of the window" and "ran over" Deputy Smith after he "fell out of the car."

Following the close of all proof, the trial court revoked the Defendant's probation in full for Cases 9555, 9852, 10152, 10259, 10394, and 10395. The trial court subsequently ordered the balance of his sentences, consisting of four consecutive sentences of eleven months and twenty-nine days, running concurrently with both his three-year sentence for Case 9555 and three-year, ten-month sentence for Case 9852, to be served in the Tennessee Department of Correction. The Defendant was given 163, 331, and 335 days of jail credit, respectively.

## ANALYSIS

The Defendant argues on appeal that the trial court erred in revoking his probation and ordering him to serve the balance of his sentence incarcerated and instead should have imposed a "less harsh" sentence, like "drug rehabilitation or a lesser sentence." He

further argues that the court abused its discretion by making an arbitrary sentencing decision. The State responds that the trial court made a conscientious decision, and the record contains substantial evidence to support it. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by a preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311. The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App.1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

At the conclusion of the probation revocation hearing, the trial court found that the Defendant had violated the terms of his probation by a preponderance of the evidence. As we have set out, the Defendant's two probation supervisors, Ms. Skiles and Ms. Perry, testified at the revocation hearing that the Defendant had failed to report to his supervisors, had amassed new criminal charges, and had failed to begin payment of his court costs or to perform his public service work at the time of the hearing. The trial court further heard the testimony of the two officers who witnessed the events that led to the Defendant's aggravated assault charge. Although the Defendant had not been convicted of aggravated assault at the time of the hearing, the trial court accredited the testimony of Officer Billingsley and Deputy Smith, finding that the Defendant had committed the probation violation by a preponderance of the evidence. Therefore, there was substantial evidence in the record that the Defendant had violated his probation, by a preponderance of the evidence, by failing to report to his probation supervisors, by being convicted of a new crime, and by engaging in additional criminal conduct.

Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 644 (Tenn. 1999); see also Tenn. Code Ann. §§ 40-35-310, -311(e), -308(c) (2014). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No.

01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999); see also State v. Markquitton Sanders, No. M2010 02212-CCA-R3-CD, 2011 WL 4529655, at *2 (Tenn. Crim. App. Sept. 29, 2011), perm. app. denied (Tenn. Nov. 17, 2011). Every sentencing decision necessarily requires a case-by-case analysis. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). Factors to be considered during sentencing include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

The Defendant received an effective three-year sentence, with 9 months to be served in the Department of Correction and the balance to be served on probation, for his original conviction in January 2014. Numerous violation of probation reports were filed with the trial court after that conviction, and the Defendant had his probation partially revoked twice and was sentenced to confinement of six months and 90 days, respectively, after the partial revocations. The testimony given at the revocation hearing demonstrated that the Defendant continued to violate the conditions of his probation after being given numerous chances to continue the program, despite his violations. In deciding to revoke the Defendant's probation, the trial court analyzed the relevant factors found in Goode, 956 S.W.2d at 527, finding that the aggravated assault charge was severe; that the Defendant had an extensive criminal history; that it was "highly likely" the Defendant would commit another offense while on probation based on his criminal history; that it was reasonably apparent the Defendant would not abide by the terms of his probation based on his criminal history; that the interest of society would be protected from the Defendant's future criminal conduct; and that the Defendant had multiple opportunities to be on probation and it was "just not working."

Based on the above factors, the trial court revoked the Defendant's probation and ordered the balance of his sentences, consisting of four consecutive sentences of eleven months and twenty-nine days, running concurrently with both his three-year sentence for Case 9555 and three-year, ten-month sentence for Case 9852, to be served in the Tennessee Department of Correction. The Defendant was given 163, 331, and 335 days of jail credit, respectively. Though the Defendant argues he should have been given a less restrictive sentence, like drug rehabilitation, he fails to recognize that he was previously given the chance to complete rehabilitation and did not do so. Further, as the trial court noted, the Defendant had numerous opportunities to continue the probation program, but instead continuously failed to adhere to the conditions of his probation. In revoking his probation, the trial court stated:

Probation is not good for you, you're not good for probation, just not a good fit. That has been proven time and time again. So, if I were just to repeat that process over again, I'd be . . . foolish[.] So, based upon that, all the factors involved, the criminal conduct and activity, the seriousness of the offenses, I'm going to just revoke you in full to serve the balance of your sentence in the Tennessee Department of Correction[].

The Defendant argues that his probation revocation does "not serve the ends of justice nor[,] is it in the best interest of both the public and the [D]efendant." However, as the trial court noted, the public will be protected from any future offenses committed by the Defendant, and probation is demonstrably an ineffective method of rehabilitation for the Defendant. Further, although the Defendant argues that the trial court's revocation was arbitrary and capricious, the trial court thoroughly considered the testimony given at the revocation hearing, the Defendant's criminal history, and the above-mentioned factors. The trial court obviously made a conscientious and intelligent decision to revoke the Defendant's probation. See Harkins, 811 S.W.2d at 82. Accordingly, the trial court clearly acted within its discretion in revoking the Defendant's probation after finding that the he had violated its terms and ordering him to serve his sentence incarcerated. The Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court revoking the Defendant's probation and ordering the balance of his sentences to be served in the Tennessee Department of Correction.

_____
ALAN E. GLENN, JUDGE