IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 1, 2020 Session

## STATE OF TENNESSEE v. TRAMMEL WILLIAMS

**Appeal from the Criminal Court for Shelby County
Nos. 17-01853, C1702811          Paula Skahan, Judge**

_____

### No. W2019-02018-CCA-R3-CD
_____

The Defendant, Trammel Williams, pleaded guilty to aggravated kidnapping and aggravated assault, and he agreed to serve an effective sentence of eight years on probation. A violation of probation warrant was issued, and following a hearing, the trial court found that the Defendant violated the terms of his probation, revoked his probation, and ordered the Defendant to serve his sentence in confinement. On appeal, the Defendant contends that the trial court lacked substantial evidence to find that he violated the terms of his probation and that the trial court abused its discretion in sentencing him to confinement. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. Ross Dyer, JJ., joined.

Phyllis Aluko, District Public Defender; Alicia J. Kutch (on appeal) and Amy Mayne (at hearing), Assistant Public Defenders, for the appellant, Trammel Williams.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Danielle McCollum, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant pleaded guilty to aggravated kidnapping and aggravated assault on October 3, 2018, and he agreed to serve an effective sentence of eight years on probation. On July 19, 2019, a violation of probation warrant was issued, alleging that the

Defendant was charged with two counts of aggravated assault, one count of aggravated kidnapping, and one count of being a felon in possession of a firearm after a domestic altercation and that he failed to inform his probation officer of his arrest. The State filed a petition requesting the trial court to revoke the Defendant's probation. The State cited the allegations in the violation of probation warrant and included as additional allegations that the Defendant violated probation rules that prohibited him from owning or possessing a firearm and from engaging in assaultive, abusive, threatening, or intimidating behavior, or behavior that poses a threat to himself or others.

At the revocation hearing, Ms. Delainey Allison Hecker testified that on July 13, 2019, while inside her residence, she heard screaming coming from across the street. She looked outside, and saw the victim being beaten in the victim's front yard by a man. She was not acquainted with the man or the victim, but she had seen the victim in that area previously and assumed she lived there. At the hearing, Ms. Hecker could not identify the Defendant as the man who assaulted the victim. Ms. Hecker testified that she captured a video of the incident of an approximate length of ten seconds. The video was played for the trial court to view, but it was not entered into evidence. Ms. Hecker testified that she observed the man pull around in the car, and yell at the victim. A few seconds later, the man shoved the victim into the front seat of the car, entered the back seat of the car, and appeared to lunge toward her in the front seat. From Ms. Hecker's observation, she concluded that the man was probably beating the victim. During the incident, the victim kept screaming, "I'm sorry." Ms. Hecker testified that the man and the victim eventually drove away.

Sergeant Brett Williams of the Memphis Police Department testified that he assisted in taking a statement from the Defendant on July 13, 2019. The Defendant informed officers that on July 13, 2019, he went to Walgreens with the victim. When the victim exited the store, she "jumped in" her sister's car with her sister and her cousin, and they sped out of the parking lot to the location where the victim's car was parked. The Defendant followed them back to the victim's car, where he saw the victim exit her sister's car and enter her own car. The Defendant stated that a man exited the victim's sister's car, and "cre[pt] around," so the Defendant "pulled [his] gun out" after which the man and victim's sister drove away. The Defendant stated that when he started talking to the victim, she "got out of the car talking crazy so [he] grabbed her by the hair and said[,] 'bitch stop playing with me.'" The Defendant alleged that the victim started hitting him and tried to bite him, so he bit her. After the victim calmed down, the Defendant told her that they needed to leave the area, so the Defendant and the victim drove to the Defendant's sister's house. The Defendant and the victim then drove the Defendant's brother to a store and left without him when he informed them that he would walk back home. While the Defendant and the victim were driving, the victim told the Defendant that she was going to jump out of the car if he did not apologize to her. She opened the door, and the Defendant told her that he did not owe her an apology and told her not to jump out of the car. The Defendant stopped the car, and the victim exited the car. The

2

victim again told the Defendant that he owed her an apology. A woman in a white car behind them told them that they needed to leave before she called the police.

Afterward, the Defendant and the victim went to his sister's house for about forty-five minutes and then returned to the victim's car. When the Defendant and the victim walked to the car, they saw police. According to the Defendant, they left without interacting with the police because "the police didn't know it was [them]." The Defendant and the victim drove away, the Defendant threw a 9 millimeter gun out of the window, and then they "pulled into the garage" and "went inside." The Defendant stated that he purchased the gun off the street for $60 about a week and a half prior to the incident, that the gun was loaded, and that he always carried the gun. The Defendant acknowledged having prior felony convictions. He stated that he had known the victim for about a week and a half at the time he gave the statement. However, the Defendant denied holding the victim against her will. The Defendant stated that he was diagnosed with Bipolar disorder and ADHD, that he had been prescribed medication for those diagnoses, and that he had not been taking his medication. Officer Wright testified that the Defendant denied at first ever being at Walgreens or being involved in an altercation, but the Defendant eventually confessed to being involved.

The Defendant testified that he should receive probation because he had been complying with the requirements of probation, had been working, and had not obtained new criminal charges. The Defendant requested probation so he could start working. He testified that he was not then in custody for the underlying charges because they were dismissed for a lack of prosecution. He maintained that he stopped reporting to his probation officer when the probation office could not tell him who his probation officer was.

On cross-examination, the Defendant testified that Officer Wright's testimony was not true, that he did not want to make a statement, and that Officer Wright convinced him to give a statement by telling him that he needed to make one or that it would "look bad." The Defendant denied having a gun, and he denied ever beating or biting the victim. He also denied ever going to Walgreens with the victim, and he explained that the victim returned to the house approximately thirty to forty minutes after she left. The Defendant testified that he did not know who the victim's sister was and that he had never seen her before. He also testified that the victim's sister dropped her off at the house after returning from Walgreens. The Defendant stated that, instead of fighting, he and the victim were "just tussling — we wasn't even tussling." He explained that "tussling" meant that he was telling the victim to "come on and go," but he testified that the altercation was not physical. He maintained that Ms. Hecker's testimony was false, and he denied coercing the victim to not appear in court.

During the hearing, the prosecution informed the trial court that the victim was then cooperating with law enforcement and that the victim could appear to testify

3

sometime in November of 2019. However, the trial court did not require her testimony before reaching a decision. The trial court found by a preponderance of the evidence that the Defendant "gravely assault[ed]" the victim. The trial court also found that the Defendant was not taking his medication, that "he's extremely violent when he's not on his medication," and "that's probably why this all happened." The trial court found that the Defendant violated the terms of his probation and revoked his probation, and it ordered him to serve his sentence in confinement. This appeal followed.

## ANALYSIS

The Defendant challenges the trial court's order revoking his probation by alleging that its decision was not supported by substantial evidence and that it erred in sentencing him to confinement. A trial court has the discretion to revoke probation if it finds by a preponderance of the evidence that a defendant violated the conditions of probation. *See* T.C.A. §§ 40-35-310, -311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). An abuse of discretion in revoking a defendant's probation occurs only where there is "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. The trial court determines the credibility of witnesses in probation revocation hearings. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978)). Additionally, the trial court's factual findings carry the weight of a jury verdict on appeal. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005) (citations omitted).

A trial court finding that a defendant has violated the conditions of probation is statutorily authorized to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the Defendant to probation on appropriate modified conditions; or (4) extend the Defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing T.C.A. §§ 40-35-308(a), (c), -310, -311(e)(1); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). In exercising its authority, a trial court has no obligation to provide a defendant already on probation "'a second grant of probation or another form of alternative sentencing.'" *State v. Tracy Arnold*, No. W2018-00307-CCA-R3-CD, 2018 WL 6266279, at *1 (Tenn. Crim. App., Nov. 30, 2018), *perm. app. denied* (Tenn. Mar. 28, 2019) (citation omitted).

Here, the trial court did not abuse its discretion in revoking the Defendant's probation. In the statement to police, the Defendant admitted to following the victim from the Walgreens store and "pull[ing] [his] gun out" when the man exited the victim's sister's car. The Defendant then grabbed the victim by the hair and bit her during an argument. Ms. Hecker testified that she observed a man beating the victim in the victim's front yard. Ms. Hecker also testified that she saw the man lunge toward the victim after shoving her in the front seat of the car. During the altercation, the victim

4

screamed repeatedly, "I'm sorry." The trial court reviewed a video of the assault. After the altercation with the victim, the two of them left in the victim's car. The Defendant told police he threw his gun out of the car window after seeing law enforcement. Although the Defendant denied the veracity of his statement given to law enforcement, the trial court implicitly declined to credit the Defendant's testimony. *See Mitchell*, 810 S.W.2d at 735. The trial court found that the Defendant "gravely assault[ed]" the victim. The Defendant's arrest for aggravated assault was one of the grounds supporting the violation of probation warrant, and his violation of rules prohibiting him from engaging in assaulting, abusive, or threatening or intimidating behavior and prohibiting him from possessing a firearm were grounds supporting the State's petition. Substantial evidence supported the trial court's conclusion that the Defendant violated his probation, *see Shaffer*, 45 S.W.3d at 554, and the Defendant is not entitled to relief on this ground.

The Defendant also contends that the trial court abused its discretion in sentencing him to confinement because it failed to consider "1) the circumstances of the offense; 2) the defendant's criminal record; 3) the defendant's social history and present condition; 4) the need for deterrence; and 5) the best interest of the defendant and the public." *See State v. Ariana Tarience Harris*, No. W2017-02302-CCA-R3-CD, 2018 WL 4562929, at *2 (Tenn. Crim. App. Sept. 21, 2018). However, the *Harris* opinion relied on by the Defendant cited to *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997), which involved an original sentencing hearing and not a revocation hearing. Rather, this court has recognized that a "trial court is only required to consider the sentencing principles when determining a defendant's original sentence." *See State v. Joshua Maurice Hickman*, No. M2010-01063-CCA-R3-CD, 2011 WL 2306104, at *3 (Tenn. Crim. App. June 8, 2011). In other words, reference to particular factors or to the principles of sentencing "'is not necessary in determining the appropriate sanction following revocation of probation.'" *Id.* (quoting *State v. Walter Jackson*, No. E1999-02186-CCA-R3-CD, 2001 WL 55687, at *2 (Tenn. Crim. App. Jan. 21, 2001)). The trial court in the present case considered the above evidence supporting its decision to revoke his probation. The trial court's decision to sentence the Defendant to confinement was well within its statutory authority. *See* T.C.A. §§ 40-35-308(a), -308(c), -310, -311(e)(1). We conclude that the trial court did not abuse its discretion.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE