FILED
04/14/2025
Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 18, 2025 Session

## STATE OF TENNESSEE v. JONATHAN ELLERBASCH, ALIAS[1]

**Appeal from the Criminal Court for Knox County**
**No. 124373    Hector Sanchez, Judge**

_____

## No. E2024-00915-CCA-R3-CD

_____

Defendant, Jonathan Ellerbasch, Alias, pleaded guilty in the Knox County Criminal Court to aggravated assault with serious bodily injury. Following a sentencing hearing, the trial court imposed a sentence of three years to be served in the Department of Correction. On appeal, Defendant contends that the trial court abused its discretion by denying an alternative sentence and in ordering a sentence of confinement. Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

T. Scott Jones, Baylee M. Brown, and Jordan D. Davis, Knoxville, Tennessee, for the appellant, Jonathan Ellerbasch, Alias.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Charme P. Allen, District Attorney General; and Sean Roberts, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Throughout the record, Defendant is referred to alternatively as: "Jonathan Ellerbasch, Alias"; "Jonathan C. Ellerbusch, Alias"; "Jonathan C. Ellerbusch"; and "Jonathan Ellerbusch." As is the policy of this court, we will refer to Defendant by the name listed in his indictment—"Jonathan Ellerbasch, Alias[.]"

# OPINION

## I. Factual and Procedural Background

In April 2023, the Knox County Grand Jury issued an indictment, charging Defendant with the following offenses:

| Count | Offense | Classification |
|-------|---------|----------------|
| 1 | Attempted second degree murder | Class B felony |
| 2 | Aggravated kidnapping | Class B felony |
| 3 | Aggravated assault by strangulation | Class C felony |
| 4 | Aggravated assault with serious bodily injury | Class C felony |
| 5 | Domestic assault | Class A misdemeanor |

On March 6, 2024, Defendant pleaded guilty, as a Range I standard offender, to aggravated assault as charged in count 4, with the length and manner of service of the sentence to be determined by the trial court. The remaining counts of the indictment were dismissed based upon Defendant's plea to count 4.

At a sentencing hearing held May 23, 2024, the State introduced a copy of the victim's medical records from the University of Tennessee Medical Center and a copy of Defendant's presentence report. The presentence report contained the following factual summary of the offense:[2]

> On 10/07/2022 at [12:57 a.m.,] Officer T. Derr was dispatched to the Willows of West Hills Apartments . . . in regard to an assault. Upon arrival, Officer Derr contacted the victim . . . . [The victim] had a bloody nose, blood around her mouth, a ripped shirt, red spots that appeared to be bruising on her head, ear, and back, popped blood vessels in her left eye, blood coming out of her right ear, and marks on her neck that appeared consistent with strangulation. [The victim] stated she had been assaulted by her neighbor, later identified as [Defendant,] inside and outside her apartment. [The victim] said while hanging out with [Defendant] he accused her of stealing his medications and later assaulted her. [The victim] stated she did not remember being punched but [Defendant] was strangling her with his hands around her throat and she believed she was going to die. [The victim] said

---

[2] Although a transcript of Defendant's guilty plea submission hearing was not included in the appellate record, we conclude that the record is adequate for our review. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) ("[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review[.]").

as soon as she could get free and run from his apartment, she did and [Defendant] followed her, again assaulting her in the grass area behind the apartments. [The victim] stated the neighbors called the police and saved her life as she was being beat up in the grass. [The victim] stated she believed she lost consciousness during the assault and believed [Defendant] was going to kill her. [The victim] stated her and [Defendant] have had a limited sexual relationship in the past. A neighbor/witness advised he saw [Defendant] assaulting [the victim] on the grass and called 911. [The victim] was transported to Tennova Medical Center Turkey Creek via ambulance for injuries resulting from the assault.

The presentence report stated that Defendant was forty-one years old; that he was a college graduate; that he was currently employed; and that he resided by himself in Knoxville. The report indicated that Defendant was single, had never been married, and had no children. It stated that Defendant had no physical health conditions but had mental health conditions, including depression and anxiety. The report indicated that Defendant had a prior criminal record, including convictions for driving under the influence (first and second offense), public intoxication, possession of drug paraphernalia, and various traffic offenses. The report also showed that Defendant was arrested for violating a restraining order approximately five months after the instant offense.

The presentence report also documented Defendant's history of alcohol and illegal drug use, noting that Defendant first used alcohol at age fourteen. Defendant reported that he first used marijuana when he was fifteen years old; that he last used marijuana on October 5, 2022; that he used cocaine "a few times" at age eighteen; that he had been addicted to opiates for five years and "used daily" during that time; that he used heroin daily in 2018; and that he used Xanax in high school and Xanax and psychedelics during college. The report stated that Defendant successfully completed an alcohol and drug inpatient program from October 10, 2022, to November 10, 2022, in Charlotte, North Carolina. Further, the report indicated that Defendant successfully completed an alcohol and drug inpatient program from December 26, 2019, to March 15, 2020, in Mendenhall, Mississippi.

According to the report, Defendant was assessed with the Strong-R Risk and Needs Assessment tool, resulting in a score of "low" with a "high need in the mental health domain" and "moderate needs in the aggression and family domains." The report stated that the risk score was "intended to predict the general likelihood of re-offense when compared to those with a similar history of offending" and that the score did not predict "the specific likelihood that an individual offender will reoffend."

- 3 -

The victim's father testified that the victim was released from the hospital within twenty-four hours after Defendant's assault. He said that he saw the victim two days later and described the victim as an emotional and physical "wreck." He said that she had "obviously been assaulted" and "beat[en] up."

The victim's father testified that he took the victim to his home in Loudon County, where he took pictures of her injuries. He identified photographs of the victim's injuries, and they were admitted as an exhibit to his testimony. He stated that he and the victim's mother were traumatized by viewing the victim's condition. He explained that the victim stayed at his house in the weeks following the assault. He said that the victim could "hardly walk" and needed assistance. He testified, "I mean she had difficult[y] walking. She had to walk with a walker as well as this device that -- they called it a clam device that had to do with some injuries to her pelvis." He said that she had to wear the clam device and use the walker for approximately six months following the assault. The victim's father said that he and the victim's mother had to drive the victim to doctors' appointments, including appointments with a psychiatrist and therapist.

Next, a statement prepared by the victim was read into the record by the victim's sister. In the statement, the victim explained that Defendant's actions on the night of October 7, 2022, affected her life "in countless ways." She said that she would "never forget the terror [she] felt" when she realized that Defendant was trying to kill her. She explained that she ran from Defendant and tried to escape into her apartment but that he caught her "by the ponytail, yanking [her] to the ground." The victim said that Defendant kicked the right side of her face, told her that he was going to kill her pets and then her, and called her "a f***ing b***h." She stated:

> I wish I could forget how it felt when [Defendant] pinned me face down on the floor with all his weight on my back and put his hands around my throat until I could not breathe in or out. I will never forget the panic I felt when I realized that I could not breathe and I thought I was going to die, and how I started frantically kicking the floor of my apartment, praying my neighbors below me would hear me and save me.

The victim said that Defendant dragged her out of her apartment and down several flights of stairs, stopping occasionally to punch or kick her. She said that Defendant had strangled her until "everything went quiet" and that she had thought she had died. The victim described the injuries she suffered from the assault, including a brain bleed, compression fractures on her spine, a fractured pelvis, a ruptured ear drum, and ruptured blood vessels in both eyes. She said that she had a bruise on her back in the shape of Defendant's shoe print. The victim explained that, after she was released from the hospital, she was physically unable to care for herself and needed to move in with her parents. She

said, "The healing process has been slow and painful[,] and I have also suffered complications from those injuries which still require ongoing medical attention." The victim stated that she had been diagnosed with post-traumatic stress disorder and that she struggled "to feel safe or secure anywhere, including [her] own home."

The victim said that Defendant had "no regard for human life" and that he "should be punished to the fullest extent the law will allow[.]" She described Defendant as "dangerous" and said that he had harassed her while out on bond in violation of the court's orders. She stated,

> I have zero reason to believe he will follow the law, even after he's released from prison. No person is safe while he's walking the streets. People who commit crimes of this magnitude should go to prison. The emotional and financial impact of [Defendant's] actions will be felt by me for years to come.

The victim said that Defendant had shown "a complete lack of remorse[.]" She stated, "I'm afraid of [Defendant] and what he may try to do to me, my family[,] or another woman in the future."

Defendant made an allocution in which he apologized to the victim and her family. He said, "I've never done anything like that before in my life. I've taken a lot of steps to rehabilitate myself and to make sure that nothing like this ever happens again[.]"

Following Defendant's allocution, he offered into evidence a copy of a "JIMS report." The report indicated that, on December 4, 2022, the victim struck two road signs on Papermill Drive while driving back to her apartment. She was charged with failure to exercise due care, DUI first offense, and a lane violation. Defendant also submitted a copy of a Certificate of Completion dated May 10, 2024, showing that he completed an eight-hour anger management class.

At the conclusion of the hearing, the trial court found beyond a reasonable doubt that Defendant was a Range I standard offender. Regarding enhancement and mitigating factors, the court applied the enhancement factor that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. The court noted that Defendant had "a lot of misdemeanor convictions and driving offenses."

The trial court stated that it considered the testimony from the victim's father regarding the victim's physical and emotional condition after the assault, the photographs of her injuries, and that her recovery took "at least six months[.]" The court said that it

also considered the information contained in the presentence report. It noted that Defendant had a "limited criminal record"; the court stated, however, that it took "judicial notice that [Defendant] was originally charged with attempted second-degree murder and agg[ravated] kidnapping, aggravated assault, and domestic assault" and found that Defendant received "a substantial break" under the plea agreement.

The trial court stated that it considered the "principles of sentencing" and arguments as to alternative sentencing. The court found that the nature and characteristics of the criminal conduct were "extremely aggravated." The court stated that it was a "very aggravated episode in which [the victim] was lucky to escape with the injuries that she did. It could have easily gotten a lot worse and it could have ultimately cost her her life." The trial court said that it also considered statistical information from the administrative office of the courts about "penitentiary overcrowding and other scenarios in which the courts need to be mindful of when imposing sentences on cases."

Regarding Defendant's allocution, the court found that Defendant's statement "was genuine." The court continued, "[T]here was some drinking involved and things got out of hand rather quickly. Unfortunately, we're still equally as responsible for our conduct when we voluntarily ingest some sort of substance and then act out based on at least some degree of consuming that substance."

The trial court specifically stated that it considered Tennessee Code Annotated section 40-35-102—the purposes and intent of sentencing. The court noted that the foremost purpose was for the court to "promote justice" in its sentencing. It noted that Defendant pleaded guilty to a Class C felony, which is "presumed probatable." The court noted that the presumption "can be overcome based on . . . his criminal history" but pointed out that "some substantial time ha[d] passed since [Defendant] was getting in trouble more regularly or routinely, roughly ten or so years ago."

The trial court next stated that it considered the principles of sentencing in Tennessee Code Annotated section 40-35-103. The trial court found that, in Defendant's case, confinement was necessary to avoid depreciating the seriousness of the offense. Further, the court stated:

> [W]hether or not confinement is particular[ly] suited as an effective deterrent to others for similar crimes. I don't think this matter garnered any sort of media attention, but the attorney general's office is in the practice of releasing press releases, and does kind of show their statistics with regard to conviction rates and things of that nature. So I think that does apply in a limited respect.

Regarding Defendant's potential for rehabilitation, the court found that Defendant was amenable to correction and rehabilitation and gave this consideration "some weight as well."

The trial court ultimately found that the seriousness of the offense warranted confinement. The court sentenced Defendant, as a Range I standard offender, to three years with a one hundred percent service rate "minus the potential of a [fifteen] percent reduction" and ordered Defendant to serve the sentence in confinement.

This timely appeal follows.

## II. Analysis

On appeal, Defendant contends that the trial court abused its discretion when it denied alternative sentencing because he has shown remorse, is amenable to rehabilitation, and cooperated with law enforcement. The State responds that the trial court acted within its broad discretion by imposing confinement because the offense committed by Defendant was "especially severe." We agree with the State.

When an accused challenges the length, range, or manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard, granting a presumption of reasonableness to "within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review applies to "questions related to probation or any other alternative sentence." *Caudle*, 388 S.W.3d at 278-79. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, this court may not disturb the sentence even if it would prefer a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.; *see State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

To determine "the specific sentence and the appropriate combination of sentencing alternatives," a trial court must consider the following: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in

Tennessee; (7) any statement made by the defendant on his own behalf; and (8) the results of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210(b). Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4). Ultimately, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4) (2010).

Defendant was eligible for probation because the sentence imposed was ten years or less and because the offense to which he pled guilty did not exclude him from eligibility. *See* Tenn. Code Ann. § 40-35-303(a). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A).

Although trial courts should automatically consider probation as a sentencing alternative for eligible defendants, defendants bear the burden of "establishing suitability" for probation. Tenn. Code Ann. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5).

Even if an offender satisfies the criteria for favorable consideration for alternative sentencing and eligibility for probation, trial courts retain discretion to deny probation entirely or to impose a sentence of full or partial confinement for other reasons, including if the trial court determines that:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

At the conclusion of Defendant's sentencing hearing, the trial court considered: the evidence presented at the hearing; the nature and characteristics of the criminal conduct involved; the information contained in the presentence report; testimony from the victim's father; photographs of the victim's injuries; the victim's medical records; the victim's impact statement; Defendant's allocution; the results of the validated risk and needs assessment; Defendant's potential for rehabilitation; the purposes and principles of sentencing; arguments as to alternative sentencing; factors supporting confinement, statistical information from the administrative office of the courts about "penitentiary overcrowding"; and the enhancement factor that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range.

Following its evaluation of each of these factors, the court imposed the minimum within-range sentence of three years. *See* Tenn. Code Ann. § 40-35-112(a)(3). Regarding the manner of service, the court ordered a sentence of confinement after finding that confinement was necessary to avoid depreciating the seriousness of the offense. *See* Tenn. Code Ann. § 40-35-103(1)(B). When "the seriousness of the offense forms the basis for the denial of alternative sentencing, . . . the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006).

In finding that confinement was necessary to avoid depreciating the seriousness of the offense, the trial court characterized the circumstances of the offense as a "very aggravated episode." The court noted that, although Defendant was allowed to plead guilty to a single count of aggravated assault, he was originally charged with attempted second degree murder, aggravated kidnapping, two counts of aggravated assault, and domestic assault due to the criminal conduct involved in the incident. As noted by the State, when weighing the seriousness of an offense, a trial court may look behind a plea agreement and consider the true nature of the offense committed, as the court did in this case. *See State v. Hollingsworth*, 647 S.W.2d 937, 939 (Tenn. 1983). The court stressed the severity of

Defendant's conduct, stating that the victim "was lucky to escape with the injuries that she did" and that the assault "could have . . . ultimately cost her her life." The court found that the victim suffered severe physical and emotional distress because of Defendant's attack, noting that the victim's physical recovery took "at least six months" and that she needed to use a walker for months after the incident.

The trial court's findings are fully supported by the record. The record reflects that Defendant's assault caused the victim severe physical injuries and that his assault on the victim included strangulation. The victim explained that Defendant told her that he was going to kill her pets and then her; she said that he kicked her in the face and dragged her out of her apartment and down several flights of stairs, stopping occasionally to punch or kick her. She said that Defendant had strangled her until "everything went quiet" and that she had thought she had died. Regarding her injuries, the victim stated that she had suffered "a brain bleed, compression fractures on [her] spine, a fractured pelvis, ruptured ear drum, and ruptured blood vessels in both eyes[,]" and the responding officer observed marks on the victim's neck consistent with strangulation. After the assault, the victim could not walk or take care of herself, and she had to move in with her parents. In addition to the victim's physical injuries, the victim was diagnosed with post-traumatic stress disorder and sought treatment from a psychiatrist and therapist. Under these circumstances, the trial court properly determined that the offense and injuries were particularly grave. *See State v. Webb*, No. W2002-03048-CCA-R3-CD, 2004 WL 47092, at *7 (Tenn. Crim. App. Jan. 2, 2004) (emphasizing the severity of the victim's injuries in affirming that the defendant's conduct was "especially violent and reprehensible"), *no perm. app. filed*.

Defendant argues that he is entitled to an alternative sentence because he cooperated with law enforcement, sought drug and alcohol treatment after his arrest, completed an anger management class before his sentencing hearing, and his risk and needs assessment indicated he had a low likelihood of reoffending. Defendant also emphasizes that he has shown remorse and expressed an interest in rehabilitation. However, there is no proof in the record concerning Defendant's cooperation with law enforcement. Additionally, although Defendant completed a month-long drug and alcohol treatment program following his arrest, the record indicates that Defendant had completed an inpatient drug and alcohol program in 2020, and clearly, he had relapsed by the time of the instant offense in 2022. Although Defendant received a score of "low" on the risk and needs assessment, the report indicated that the score did not predict "the specific likelihood that an individual offender will reoffend." Furthermore, as noted by the State, the record suggests that Defendant did not leave the victim alone following the attack. The victim stated that Defendant harassed her while he was out on bond, and the presentence report notes that Defendant was arrested for violating a restraining order about five months after his assault on the victim. We agree with the State that "such behavior [would] undermine[] Defendant's claims regarding remorse, rehabilitation, and likelihood of recidivism." In

- 10 -

any event, the trial court considered each of these points but, nevertheless, concluded that the nature of Defendant's offense outweighed all factors favoring a sentence other than confinement. *See Trotter*, 201 S.W.3d at 654.

Because the trial court imposed a within-range sentence and addressed all relevant sentencing factors, the court's decision to order a sentence of confinement is entitled to a presumption of reasonableness. *Caudle*, 388 S.W.3d at 278-79. Defendant has not shown that the trial court abused its discretion, and he is not entitled to relief.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.


_s/Robert L. Holloway, Jr._
ROBERT L. HOLLOWAY, JR., JUDGE